**PUBLISH**

**February 1, 2010**

**UNITED STATES COURT OF APPEALS**

**Elisabeth A. Shumaker**
**Clerk of Court**

**TENTH CIRCUIT**

---

WILLIAM N. PETERSON; GARY
ROGERS; MELVIN R. HETT,

    Plaintiffs-Appellants,

v.

JOHN GRISHAM; DOUBLEDAY DELL
PUBLISHING GROUP; RANDOM
HOUSE, INC.; ROBERT MAYER;
BROADWAY BOOKS; DENNIS FRITZ;
SEVEN LOCKS PRESS, INC.; BARRY
SCHECK,

    Defendants-Appellees.

No. 08-7100

---

**Appeal from the United States District Court**
**for the Eastern District of Oklahoma**
**(D.C. No. 6:07-CV-00317-RAW)**

---

Gary L. Richardson (Denise P. James with him on the briefs), The Richardson Law Firm,
P.C., Tulsa, Oklahoma, for the Plaintiffs-Appellants.

Robert D. Nelon, Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Oklahoma City,
Oklahoma, and Cheryl A. Pilate, Morgan Pilate, LLC, Olathe, Kansas (Jon Epstein, Hall,
Estill, Hardwick, Gable, Golden & Nelson, P.C., Oklahoma City, Oklahoma, with them
on the briefs), for the Defendants-Appellees.

Before **KELLY**, **McKAY**, and **LUCERO**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

---

In 1988, Ronald Williamson and Dennis Fritz were wrongly convicted of the rape and murder of Debra Sue Carter. Both men were later exonerated after spending over a decade in jail. Their painful story caught the attention of renowned legal-fiction author John Grisham, who wrote a book about Williamson appropriately titled The Innocent Man. Fritz also wrote a book, Journey Toward Justice, detailing the horror of his years of unjust confinement.

Each of the plaintiffs in this case—Oklahoma District Attorney William Peterson; former Shawnee police officer Gary Rogers; and former Oklahoma state criminologist Melvin Hett—played a role in the investigation or prosecution and conviction of Williamson and Fritz. Neither The Innocent Man nor Journey Toward Justice paints the plaintiffs in a positive light. Following the release of these books, plaintiffs filed suit in Oklahoma district court seeking relief for defamation, false light invasion of privacy, intentional infliction of emotional distress, and civil conspiracy. They named Grisham, Fritz, anti-death penalty advocate Barry Scheck, and author Robert Mayer—along with their respective publishers—as defendants.[1] The district court dismissed the suit for

---

[1] Plaintiffs also named James Riordan as a defendant, but Riordan was dismissed as a defendant by stipulation on January 23, 2008.

failure to state a claim upon which relief can be granted.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I

On the morning of December 8, 1982, Carter was found dead in her garage apartment in the small town of Ada, Oklahoma.  She had been raped and suffocated by her assailant.  Four years later, Rogers and his fellow officers arrested Williamson and Fritz for Carter's murder.  Peterson prosecuted the case.

The evidence against Williamson and Fritz consisted of hair samples, Williamson's statement to police about a dream in which he had committed the murder, and the testimony of jailhouse informants.  Williamson v. State, 812 P.2d 384, 391-93 (Okla. Crim. App. 1991).  Hett testified that hairs recovered from the crime scene belonged to Williamson and Fritz.  Id. at 391.  Based on this evidence, the jury convicted Williamson and Fritz of rape and murder.  Williamson was sentenced to death, and Fritz received life in prison.  Id. at 390, 391 n.1.

Following a grant of habeas relief by the Eastern District of Oklahoma, DNA testing was ordered in 1999.  That testing revealed that hair and semen samples taken from the crime scene could not have come from Williamson and Fritz.  Both men had been wrongfully convicted.  Another man was eventually found guilty of Carter's

murder.  <u>Gore v. State</u>, 119 P.3d 1268 (Okla. Crim. App. 2005).[2]  Williamson and Fritz's exonerations spawned two different books, as well as a chapter in a third and an afterword in a fourth.

Grisham published <u>The Innocent Man</u> in 2006.  It tells Williamson's life story and explores the circumstances leading to his wrongful conviction, imprisonment, and subsequent exoneration.  Grisham depicts Peterson, Rogers, and Hett as particularly responsible for the plight of Williamson and Fritz.  He also faults what he describes as a broken criminal justice system that condones "bad police work, junk science, faulty eyewitness identifications, bad defense lawyers, lazy prosecutors, [and] arrogant prosecutors."

In <u>Journey Toward Justice</u>, Fritz speaks in equally harsh tones about the public officials who put him behind bars.  As the title suggests, the book describes Fritz's agonizing trail from wrongful imprisonment to exoneration.  Fritz recounts in vivid detail his fears and frustrations as a wrongfully accused murder suspect and convict, and his eventual elation upon release.

Barry Scheck, Fritz's former attorney and a prominent anti-death penalty advocate, wrote the foreword to <u>Journey Toward Justice</u>.  In that foreword, Scheck commends Fritz for having the courage to write his personal story, and praises Fritz for his recent work in the anti-death penalty movement.  Both Fritz and Scheck were

---

[2] An appellate court reversed the conviction after finding a due process error.  <u>Id.</u> at 1272-78.

interviewed by Grisham for The Innocent Man. Scheck ultimately devoted a chapter of

his 2003 book, Actual Innocence, to the wrongful convictions of Williamson and Fritz.

Lastly, Robert Mayer's book, The Dreams of Ada, explores the 1985 convictions

of Tommy Ward and Karl Fontenot for the death of Denice Haraway. The Haraway case

shared many parallels with the Carter case, including minimal physical evidence, the use

of "dream" confessions, and reliance on testimony by jailhouse informants. That case

also involved a similar cast of characters: Peterson was the prosecutor and Rogers was

the investigator. Grisham used The Dreams of Ada—and found it to be particularly

helpful—in his research for The Innocent Man. Shortly after Grisham's book was

published, Broadway Books reissued The Dreams of Ada with a new afterword written

by Mayer.[3]

With the exception of Actual Innocence, all these books were released (or, in the

case of The Dreams of Ada, re-released) in October 2006. One year later, Peterson and

Rogers filed suit alleging defamation, false light invasion of privacy, intentional infliction

of emotional distress, and civil conspiracy. They subsequently amended their complaint

to add Hett as a plaintiff.[4] After defendants filed motions to dismiss, the district court

---

[3] Because The Dreams of Ada was originally published in 1987, the district court correctly dismissed plaintiffs' claims regarding Mayer's statements in that book as time-barred. See Okla. Stat. tit. 12 § 95(A)(3)-(4). Thus, we will only discuss Mayer in regard to his 2006 afterword and his alleged involvement in a civil conspiracy against plaintiffs.

[4] Hett was not involved in the Haraway case and is not mentioned in The Dreams of Ada. He asserted substantive claims only against Grisham and his publishers.

directed plaintiffs to file a second amended complaint specifying the alleged defamatory statements.

In their 116-page second amended complaint, plaintiffs claimed that defendants engaged in "a massive joint defamatory attack" against them. This attack was motivated in part by defendants' shared desire "to further efforts to abolish the [d]eath [p]enalty." The district court dismissed the second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Peterson v. Grisham, No. CIV-07-317-RAW, 2008 WL 4363653, at *10 (E.D. Okla. Sept. 17, 2008) (unpublished). It also dismissed plaintiffs' motion to further amend their complaint. Id. This appeal ensued.

## II

We review de novo the district court's grant of a Rule 12(b)(6) motion to dismiss. Teigen v. Renfrow, 511 F.3d 1072, 1078 (10th Cir. 2007). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's amended complaint alone is legally sufficient to state a claim for which relief may be granted." Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir. 1991). We accept all well-pled factual allegations as true and view these allegations in the light most favorable to the nonmoving party. Sutton v. Utah State Sch. for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999).

To survive a Rule 12(b)(6) motion, a plaintiff must allege sufficient facts to make her "claim for relief . . . plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544,

557 (2007). While "[t]echnical fact pleading is not required . . . the complaint must still provide enough factual allegations for a court to infer potential victory." Bryson v. Gonzales, 534 F.3d 1282, 1286 (10th Cir. 2008). If the allegations "are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" Robbins v. Oklahoma ex rel. Dep't of Human Servs., 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting Twombly, 550 U.S. at 570).

## A

Before evaluating each of plaintiffs' claims individually, we consider plaintiffs' general arguments that the district court incorrectly applied Rule 12(b)(6). Plaintiffs argue that that the district court applied summary judgment standards in evaluating defendants' 12(b)(6) motions. It is correct that the district court cited to two summary judgment cases in its analysis, Partington v. Bugliosi, 56 F.3d 1147 (9th Cir. 1995), and Riley v. Harr, 292 F.3d 282 (1st Cir. 2002). Peterson, 2008 WL 4363653, at *4-5. However, the court cited to these cases in discussing the proper review of an alleged defamatory statement in the context of the book as a whole. When reciting the legal standard for dismissal, the district court specifically stated it was evaluating defendants' motions under Rule 12(b)(6). Id. at *1-2.

Plaintiffs also contend that the district court "failed to take into consideration any of the one-hundred and three . . . pages of specific factual allegations" in their second amended complaint. According to plaintiffs, the court sweepingly concluded that

- 7 -

statements by authors regarding government officials and public figures could never be considered defamatory or otherwise actionable. They further accuse the district court of neglecting to analyze each of the factual allegations in their complaint on the basis that the district court noted that such a task would be "boring" and "repetitive." Id. at *6.

Plaintiffs mischaracterize the district court's statements. The court did not rule that defamation claims against authors writing about public officials are never plausible. Instead, it dismissed plaintiffs' complaint only "after review of each of the statements alleged." Id. Though we encourage district courts to more fully articulate their reasoning in granting Rule 12(b)(6) motions, the court was not required to engage in a detailed written analysis of each of dozens of allegedly defamatory statements. The district court concluded the statements shared common characteristics that preclude relief, and the record on appeal provides this court with an adequate basis for reviewing each statement. Cf. Aramburu v. Boeing Co., 112 F.3d 1398, 1401 n.1 (10th Cir. 1997) (reaching a similar conclusion in a summary judgment context).

**B**

Turning to plaintiffs' individual claims, we agree with the district court that each cause of action fails to state a claim upon which relief can be granted. Taking as true the facts plaintiffs allege in their second amended complaint, we conclude that defendants are statutorily protected from suit.

**1**

Oklahoma law defines libel as "a false or malicious unprivileged publication . . .

which exposes any person to public hatred, contempt, ridicule or obloquy, or which tends to deprive him of public confidence, or to injure him in his occupation." Okla. Stat. tit. 12, § 1441. To state a claim for libel, a plaintiff must allege that a defendant made: "(1) a false and defamatory statement concerning [plaintiff]; (2) an unprivileged publication to a third party; and (3) fault amounting to at least negligence on the part of the publisher." Cardtoons, L.C. v. Major League Baseball Players Ass'n, 335 F.3d 1161, 1166 (10th Cir. 2003) (citing Sturgeon v. Retherford Publ'ns, Inc., 987 P.2d 1218, 1223 (Okla. Civ. App. 1999)).

Unless a plaintiff demonstrates that a defendant committed libel per se, she must also plead and prove special damages caused by publication. Id. Because plaintiffs in this case concede that they alleged no special damages, they must prove libel per se, which requires a statement that is "clearly defamatory on its face." Miskovsky v. Tulsa Tribune Co., 678 P.2d 242, 247 (Okla. 1983) (quotation omitted); see also Nichols v. Bristow Publ'g Co., 330 P.2d 1044, 1045 (Okla. 1957) ("Per se means by itself, and without innuendo." (internal quotations omitted)). In contrast, statements that are "reasonably susceptible of both a defamatory and innocent meaning" are not libelous per se. Miskovsky, 678 P.2d at 247 (quotation omitted). Likewise, mere "gratuitous conclusions of the pleader" cannot be taken to give "words a meaning which they did not otherwise have." Okla. Publ'g Co. v. Kendall, 221 P. 762, 764 (Okla. 1923).

Given that plaintiffs are public officials, they face an especially heavy burden in attempting to demonstrate libel per se. Under Title 12, § 1443.1, of the Oklahoma

- 9 -

Statutes, "[a]ny and all criticisms upon the official acts of any and all public officers" are privileged and cannot be considered libelous, unless a defendant makes a false allegation that the official engaged in criminal behavior. To fall into this category, "the words alleged to have been spoken of the plaintiff, when taken in their plainest and most natural sense, and as they would be ordinarily understood, [must] obviously import the commission of crime punishable by indictment." Kendall, 221 P. at 764.[5]

Plaintiffs have not carried their burden. Several of the statements included in plaintiffs' second amended complaint do not concern plaintiffs and therefore would not constitute libel against them regardless of their status as public officials or whether they had pled special damages.[6] As to those that do, we agree with the district court that

---

[5] Kendall may arguably provide for an additional exception: "When a defense of privileged comment on a matter of public interest is presented by the issues, the plaintiff may overcome the privilege pleaded either by proof that the publication was inspired by actual malice, or that the facts published and commented upon were false." Id. at 768 (quotations omitted); see also John W. Hager, Civil Libel and Slander in Oklahoma, 2 Tulsa L.J. 1, 24-25 (1965); Phillip D. Hart, Note, Libel and Slander: Privilege to Criticize Public Officials, 12 Okla. L. Rev. 300, 300-02 (1959). We do not address the potential existence of such an exception because plaintiffs conceded or waived the point below in their response to a motion to dismiss by stating "[b]ecause of the nature of the communication this lawsuit is based upon, all statements other than those which 'falsely impute[] crime to the' Plaintiffs are, by statute, privileged communication." (Quoting § 1443.1); see O'Connor v. City & County of Denver, 894 F.2d 1210, 1214 (10th Cir. 1990); see also Kendall, 221 P. at 768 (holding that that once a defendant raises a § 1443.1 defense, the plaintiff bears the burden of demonstrating the privilege does not apply).

[6] For example, plaintiffs contend that Grisham falsely stated in his book that the judge handling Fritz and Williamson's preliminary hearing was elected, when in fact the judge was appointed. This statement, although it may convey incorrect information about

Continued . . .

- 10 -

plaintiffs point to no statement in which defendants directly accuse any plaintiff of a crime.[7] Plaintiffs expect us to scale a mountain of inferences in order to reach the conclusion that defendants' statements impute criminal acts to plaintiffs and render the statutory privilege of § 1443.1 inapplicable. We decline to engage in such inferential analysis, or to take a myriad of other analytical leaps plaintiffs ask us to make. Any connection between defendants' statements and an accusation of criminal activity is far too tenuous for us to declare them as unprivileged for purposes of § 1443.1.

**2**

Although the text of § 1443.1 only specifically includes claims for libel, Oklahoma courts have extended its reach to cover claims for intentional infliction of emotional distress and false light invasion of privacy. See Kirchstein v. Haynes, 788 P.2d 941, 954 (Okla. 1990) (intentional infliction of emotional distress); Johnson v. KFOR, 6 P.3d 1067, 1069 (Okla. Civ. App. 2000) (false light). In Kirschstein, the

the judge, does not directly implicate any of the plaintiffs. Thus, as a matter of law, the statement, along with numerous others that do not directly concern plaintiffs, is not libelous as to plaintiffs.

[7] The district court also determined that the First Amendment protects at least some of defendants' statements. Peterson, 2008 WL 4363653, at *4-6. Because Oklahoma law is dispositive in this case, we need not engage in a constitutional analysis. But we note that, at a minimum, allowing the plaintiffs to recover would offend the spirit of the First Amendment. Defendants wrote about a miscarriage of justice and attempted to encourage political and social change. To the extent their perceptions of the affair were erroneous, we depend on the marketplace of ideas—not the whim of the bench—to correct insidious opinions. See Gertz v. Robert Welch, Inc., 418 U.S. 323, 339-40 (1974); accord Milkovich v. Lorain Journal Co., 497 U.S. 1 (1990).

Oklahoma Supreme Court held that "when [a] claim for intentional infliction of emotional distress is based on the same factual underpinnings as a defamation claim for which the privilege applies, a claim for intentional infliction of emotional distress is also barred by the reach of the absolute privilege." 788 P.2d at 954.[8] We are faced with the same factual underpinnings for plaintiffs' intentional infliction of emotional distress claims as those for their libel claims. Because we have already determined that § 1443.1 applies to plaintiffs' libel claims, we necessarily conclude that plaintiffs are also barred under the statute from asserting a valid claim of intentional infliction of emotional distress.

Similarly, § 1443.1 protects defendants from plaintiffs' false light claims. See Johnson, 6 P.3d at 1069 (applying the privilege to both defamation and false light claims). Unlike a claim for libel per se, a claim for false light invasion of privacy can properly rest on a defendant stating a falsehood by implication—such as through the use of innuendo. See Restatement (Second) of Torts § 652E cmt. b (1977) ("It is not . . . necessary to the action for invasion of privacy that the plaintiff be defamed."); McCormack v. Okla. Publ'g Co., 613 P.2d 737, 741 (Okla. 1980) ("It is not necessary that the statements be untrue."). However, there must be a clear connection between a defendant's statement and the falsehood that the statement purportedly implies. See

---

[8] We recognize that Kirschstein dealt with the privilege for communications made in connection with judicial proceedings, but we find its reasoning equally applicable in the context of § 1443.1.

Restatement (Second) of Torts § 652E cmt. b, illus. 1-5.  As noted, plaintiffs fail to allege the necessary nexus between defendants' statements and the proposition that plaintiffs were involved in a crime.[9]  It necessarily follows that, under Oklahoma law, plaintiffs fail to state an actionable claim for false light invasion of privacy.

## C

Plaintiffs likewise fail on their final claim, civil conspiracy.  A civil conspiracy consists of two or more persons agreeing "to do an unlawful act, or to do a lawful act by unlawful means."  Roberson v. PaineWebber, Inc., 998 P.2d 193, 201 (Okla. Ct. App. 1999).  But "a conspiracy between two or more persons to injure another is not enough; an underlying unlawful act is necessary to prevail on a civil conspiracy claim."  Id.  "Disconnected circumstances, any . . . of which[] are just as consistent with lawful purposes as with unlawful purposes, are insufficient to establish a conspiracy."  Dill v. Rader, 583 P.2d 496, 499 (Okla. 1978).

Plaintiffs argue that defendants' parallel conduct in publishing (and republishing) their books in close temporal proximity and defendants' endorsements of each other's

_____

[9] For example, plaintiffs contend the following statement by Grisham cast Hett in a false light as an individual who committed the felony offense of perjury:  "The only proof that remotely tied Fritz to the murder was the hair analysis testimony of Melvin Hett. . . . Barney and Greg Saunders knew the hair and fingerprint testimony was suspect."  To construe that statement as imputing perjury to Hett, we would need to infer from the statement that, in addition to the other individuals named, Hett had personal knowledge the evidence was suspect to a degree that his testimony could be considered perjurious.  It would be unreasonable to credit so tenuous an inference.

- 13 -

books are sufficient evidence to establish a civil conspiracy.[10] We disagree. Merely because defendants published their books in close temporal proximity to one another does not demonstrate there was an illegal agreement to engage in "a massive joint defamatory attack." The same is true for book endorsements. There may well have been other entirely legitimate motives at play, such as a desire to sell more books or aspirations to foster public support for the abolition of the death penalty. Publishing and endorsing books are perfectly lawful activities. We conclude that plaintiffs failed to plead either illegal ends or illegal means, and accordingly the district court did not err in dismissing plaintiffs' claim of a civil conspiracy.

### III

Having determined that plaintiffs' second amended complaint fails to state a claim on which relief may be granted, we now ask whether a new affidavit produced by plaintiffs changes the equation and effects a different result. The district court determined it would not, denying plaintiffs' motion to amend based on new evidence as futile. Peterson, 2008 WL 4363653, at *9-10. Although we review a district court's decision to deny a motion to amend a pleading for abuse of discretion, when the denial is "based on a determination that amendment would be futile, our review for abuse of

---

[10] Examples of these endorsements include: Grisham's stating that Journey Toward Justice is "Compelling and Fascinating"; Fritz's expressing his thanks to Grisham "for his friendship, inspiration and encouragement to write my story"; and Grisham's endorsing The Dreams of Ada as "[a] riveting true story of a brutal murder in a small town and the tragic errors made in the pursuit of justice."

discretion includes de novo review of the legal basis for the finding of futility." Miller v. Bd. of Educ. of Albuquerque Pub. Sch., 565 F.3d 1232, 1249 (10th Cir. 2009).

Plaintiffs sought leave to amend their complaint for a third time by supplementing it with an affidavit allegedly showing that Scheck sought opinions from more than one expert when he defended Williamson and Fritz. According to plaintiffs, this affidavit would provide further support for each of their claims. We agree with the district court that attorneys regularly consult more than one expert. Such "run-of-the-mill litigation tactics" do not demonstrate a conspiracy. Peterson, 2008 WL 4363653, at *9. Moreover, the affidavit does not speak to whether any of defendants' statements impute criminal activity to plaintiffs. Thus, we take the view of the district court that amendment would be futile.

## IV

For the foregoing reasons, we **AFFIRM** the district court's dismissal of plaintiffs' second amended complaint for failure to state a claim upon which relief can be granted. We also **AFFIRM** the court's denial of plaintiffs' motion to amend.