FILED
United States Court of Appeals
Tenth Circuit

January 31, 2011

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

ERIC MARSHALL,

      Plaintiff-Appellant,

v.

KEVIN MILYARD, Warden;
STEVEN BADE, Lieutenant; JAMES
FRYER, Correctional Officer;
ANTHONY A. DECESARO,
Grievance Officer; FLOYD A. WADE,
West CC Manager; M. NEGLEY, Shift
Commander,

      Defendants-Appellees.

No. 10-1104
(D.C. No. 1:08-CV-00299-PAB-BNB)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, Circuit Judge, **PORFILIO** and **BRORBY**, Senior Circuit
Judges.

---

      Eric Marshall, a Colorado state-prison inmate proceeding pro se, appeals

the district court's dismissal of his claims under 42 U.S.C. § 1983 asserting

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

constitutional violations.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm in part, reverse in part, and remand for further proceedings.

*Background*

Although Mr. Marshall asserted four claims in his amended complaint, on appeal he addresses only two of them:  his excessive-force and retaliation claims against Lieutenant Steven Bade.  In support of these claims he alleged the following:

Lieutenant Bade approached him at the shower on June 11, 2007, and told him to lock down in his cell.  When he asked why he needed to lock down, Lieutenant Bade replied that he was not sure.  Mr. Marshall retorted that "per the Co[d]e of Penal Disciplinary Book your order must give notice and it must be reasonable in nature." R. at 45.  Lieutenant Bade replied, "I don't care[.  G]o lock down." *Id.*  As Mr. Marshall began walking toward his cell to lock down, Lieutenant Bade grabbed his upper right arm.  He turned and told Lieutenant Bade, "[D]o not put your hands on me." *Id.*  Lieutenant Bade then ordered him to "turn around and cuff up." *Id.*  Mr. Marshall did not resist being handcuffed but remarked, "[A]ll you had to do was ask me first before you put your hands on me for no reason.  I was walking to the cell to lock down." *Id.*  Lieutenant Bade and another officer then escorted Mr. Marshall about 1,200 feet to see Captain M. Negley, the shift commander, with Lieutenant Bade holding Mr. Marshall's right arm and the other officer holding his left arm.  As they were walking,

Lieutenant Bade put his fingernails deep into Mr. Marshall's right arm.[1] Lieutenant Bade injured him, as documented by a prison medical form attached to his amended complaint. That form, dated June 11, 2007, indicated that he had a three-by-four-centimeter bruise on the inside of his upper right arm and a four-by-five-centimeter red area on the outside of that arm.

Mr. Marshall asserted to Captain Negley that Lieutenant Bade had violated prison policy by ordering him to lock down, but Captain Negley placed him in segregation for 14 days, at Lieutenant Bade's request. He received a notice of Code of Penal Discipline (COPD) charges, accusing him of advocating or creating a facility disruption and disobeying a lawful order on June 11. The charges were dismissed after a hearing, however, because a prison lieutenant testified that no instruction had been given for Mr. Marshall to be locked down. Lieutenant Bade then retaliated by bringing a false charge against him for unauthorized absence and ensuring his conviction on that charge by procuring false statements from lower-ranking staff members. As a result of this conviction, Mr. Marshall lost eight days of good-time credit and he was ineligible for earned-time credit for a period of time.

Mr. Marshall filed this action in February 2008. Defendants moved under Fed. R. Civ. P. 12(b)(6) to dismiss his amended complaint for failure to state a

---

[1] Mr. Marshall made conflicting statements in his amended complaint concerning whether this alleged force began before or after he was in handcuffs.

claim. The district court referred the motion to a magistrate judge, who recommended dismissal of all claims. After reviewing Mr. Marshall's objections, the district court accepted the magistrate judge's recommendations and entered judgment in favor of defendants. Mr. Marshall filed a timely appeal. The district court denied his application for leave to proceed in forma pauperis on appeal, concluding that his appeal was not taken in good faith.

### *Standard of Review*

We review de novo a district court's dismissal of a claim under Fed. R. Civ. P. 12(b)(6). *See Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010). The court's function is "to assess whether the plaintiff's amended complaint alone is legally sufficient to state a claim for which relief may be granted." *Id.* (internal quotation marks omitted). In doing so, we accept all well-pleaded allegations as true and construe them in the light most favorable to Mr. Marshall. *See id.* And because Mr. Marshall is proceeding pro se, we liberally construe both his amended complaint and his arguments on appeal. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (recognizing pro se litigant's pleadings are "held to a less stringent standard"); *Cummings v. Evans*, 161 F.3d 610, 613 (10th Cir. 1998) (liberally construing pro se appellate brief). Our broad reading of his complaint, however, does not relieve Mr. Marshall of "the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall*, 935 F.2d at 1110. To avoid dismissal, his amended complaint

must contain enough facts to state a claim for relief that is "plausible on its face." *Peterson*, 594 F.3d at 727 (internal quotation marks omitted).

### *Excessive-Force Claim*

Mr. Marshall argues that his amended complaint sufficiently alleged an excessive-force claim against Lieutenant Bade. "Ordinarily, an excessive force claim involves two prongs: (1) an objective prong that asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and (2) a subjective prong under which the plaintiff must show that the officials acted with a sufficiently culpable state of mind." *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003) (internal quotation marks and brackets omitted). "The subjective element of an excessive force claim turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* (internal quotation marks omitted). Mr. Marshall contends that his amended complaint satisfied the subjective component by showing that Lieutenant Bade used force against him on June 11, 2007, when he had no cause to do so. He points to his allegation that there was no basis for Lieutenant Bade's order to lock down in his cell. He asserted that he was nonetheless complying with that order and moving toward his cell when Lieutenant Bade grabbed his arm. He further alleged that he did not resist being handcuffed, yet Lieutenant Bade dug fingernails into his arm with enough force to injure him. Mr. Marshall argues that these allegations

-5-

support a conclusion that Lieutenant Bade acted maliciously and sadistically to cause him harm, rather than to maintain or restore discipline.

These allegations may be sufficient to satisfy the subjective prong of an excessive force claim. But we need not decide that issue because Mr. Marshall failed to allege sufficient facts to show wrongdoing that was "objectively harmful enough to establish a constitutional violation." *Smith*, 339 F.3d at 1212. An action by a prison guard may be malevolent yet not amount to cruel and unusual punishment. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992). As the Court made clear in *Hudson*, "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Id.* (internal quotation marks omitted). Thus, even if a use of force is deemed unnecessary after the fact, if it was both de minimus and "not of a sort repugnant to the conscience of mankind," it will not sustain an excessive-force claim. *Id.* at 10 (internal quotation marks omitted).

We accept as true, as we must, the allegation that Lieutenant Bade grabbed Mr. Marshall's arm and dug his fingernails into it, resulting in an injury. We addressed a similar extent of force in *Norton v. City of Marietta*, 432 F.3d 1145, 1156 (10th Cir. 2005), in which prison guards were alleged to have injured a prisoner by grabbing him around his neck and twisting it. We held that the officers' actions were not "objectively harmful enough to establish a constitutional violation." *Id.* We reach the same conclusion here. The force

-6-

allegedly used against Mr. Marshall was both de minimus and not of a nature that is repugnant to mankind.

Our conclusion is bolstered by our sister circuits' decisions considering comparable, or even greater, uses of force. In *DeWalt v. Carter*, 224 F.3d 607, 610-11 (7th Cir. 2000), a prisoner alleged that an officer shoved him into a doorframe after the prisoner called him unprofessional. The prisoner suffered bruising on his back. *Id.* at 611. The court held that the force used was de minimus and insufficient to support an Eighth Amendment claim. *Id.* at 620. Another court held that bumping, grabbing, elbowing, and pushing a prisoner was "not sufficiently serious or harmful to reach constitutional dimensions." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997); *see also Lunsford v. Bennett*, 17 F.3d 1574, 1578, 1582 (7th Cir. 1994) (hitting prisoner in the head with a bucket, causing daily headaches, was minor use of force insufficient to establish constitutional violation); *Black Spotted Horse v. Else*, 767 F.2d 516, 517 (8th Cir. 1985) (pushing cubicle-cell wall onto prisoner's leg, causing bruises, was insufficient use of force to state a constitutional violation); *Olson v. Coleman*, 804 F. Supp. 148, 149-50 (D. Kan. 1992) (single blow to prisoner's head while escorting him into prison, causing contusion, was de minimus use of force not repugnant to conscience of mankind).

Moreover, although Mr. Marshall was not required to allege a significant injury in order to state an Eighth Amendment excessive-force claim, the extent of

his injury "may . . . provide some indication of the amount of force applied." *Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178 (2010); *see also Hudson*, 503 U.S. at 7 (absence of serious injury is relevant to Eighth Amendment inquiry, "but does not end it"). Mr. Marshall argues on appeal that Lieutenant Bade used enough force to make his arm bleed. But that is not what his amended complaint alleged. He asserted that the prison medical form attached as an exhibit to his amended complaint documented his injury. We consider this attachment as a part of his complaint for purposes of a Rule 12(b)(6) motion. *See Hall*, 935 F.2d at 1112. The medical form shows only areas of redness and bruising. Thus, the facts he averred regarding the extent of his injuries lend further support to our conclusion that Lieutenant Bade used only de minimus force. *See DeWalt*, 224 F.3d at 620 (relying, in part, on prisoner's minor injuries in concluding force was de minimus); *Lunsford*, 17 F.3d at 1582 (same); *Black Spotted Horse*, 767 F.2d at 517 (same).

The district court did not err in dismissing Mr. Marshall's excessive-force claim under Rule 12(b)(6) for failure to state a claim. In reaching this conclusion, we do not condone unnecessary uses of force by prison guards. But Mr. Marshall's allegations of de minimus force simply fall short of what is required to establish a constitutional violation. The district court's dismissal of Mr. Marshall's excessive-force claim is affirmed.

### *Retaliation Claim*

Mr. Marshall alleged that Lieutenant Bade retaliated against him for the dismissal of the COPD charges related to the June 11, 2007, incident.  He claimed that Lieutenant Bade initiated an unfounded charge of unauthorized absence and then ensured his conviction by procuring false statements from lower-ranking officers.  As a result of his COPD conviction, Mr. Marshall lost eight days of good-time credit and he was temporarily ineligible to receive earned-time credit.

The district court dismissed Mr. Marshall's retaliation claim as barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), because he had failed to allege that his COPD conviction and the resulting deprivation of good-time credits had already been invalidated.  In *Heck* the Court held that "habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983."  *Id.* at 481.

> Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Id.* at 487.

The *Heck* rule also applies to a claim challenging prison disciplinary proceedings when the alleged unconstitutional conduct could support a core

habeas claim. *See Edwards v. Balisok*, 520 U.S. 641, 643, 648 (1997) (prisoner's § 1983 claim barred by *Heck* because allegations of deceit and bias necessarily implied invalidity of disciplinary proceedings used to deprive him of good-time credits toward his release). On the other hand, a § 1983 claim remains available if "success in the action *would not necessarily* spell immediate or speedier release for the prisoner," *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005), because a core habeas remedy is not available in that circumstance, *see id.* at 83-84. In *Wilkinson* the Court held that the prisoners' claims were cognizable under § 1983 because judgments in their favor would, at most, entitle them to speedier or new consideration for discretionary parole. *See id.* at 82. In short:

> [A] state prisoner's § 1983 action is barred (absent prior invalidation)–no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)–*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration.

*Id.* at 81-82.

The district court concluded that Mr. Marshall's § 1983 retaliation claim was barred by *Heck* because a judgment in his favor would necessarily imply the invalidity of his COPD conviction and his resulting loss of good-time credits. But under Colorado law, accumulation of good-time credits affects only a prisoner's parole-eligibility date. *See Jones v. Martinez*, 799 P.2d 385, 388 (Colo. 1990) (good-time credits "do not constitute service of sentence" and only

-10-

serve to "make the inmate eligible for release on parole"). In most cases, parole

in Colorado remains discretionary even after a prisoner accrues sufficient credits

to become eligible for it. *See Thiret v. Kautzky*, 792 P.2d 801, 805 (Colo. 1990).[2]

Consequently, invalidation of Mr. Marshall's COPD conviction and restoration of

his good-time credits would afford him only speedier consideration for

discretionary parole, rather than ensure speedier release. Thus, the district court

adopted an incorrect ground for barring Mr. Marshall's § 1983 retaliation claim

under *Heck*. *See Wilkinson*, 544 U.S. at 82.

The Colorado Attorney General urges us to affirm the district court's

dismissal of Mr. Marshall's retaliation claim under *Heck* on another basis: the

implied challenge to his temporary loss of eligibility to receive earned-time

credits. The Attorney General asserts that earned-time credits, unlike good-time

credits, reduce the length of a prisoner's sentence.[3] Although Mr. Marshall did

---

[2]     Some Colorado prisoners are entitled to parole upon reaching their parole date, *see Thiret*, 792 P.2d at 805; but Mr. Marshall did not allege facts in his amended complaint indicating that he falls in this category.

[3]     For this proposition the Attorney General cites C.R.S. § 17-22.5-402(2), which provides: "[T]he full term for which an inmate is sentenced shall be reduced by any earned release time and earned time granted pursuant to section 17-22.5-405 . . . ." Section 17-22.5-405(3) gives the department of corrections authority to "grant, withhold, withdraw, or restore . . . an earned time deduction from the sentence imposed." We note, however, that the Colorado Supreme Court cited both these statutory sections in its decision rejecting a prisoner's contention that he had satisfied his sentence and was entitled to an unconditional release from prison based on his time served, plus his accumulated good-time and earned-time credits. *See Meyers v. Price*, 842 P.2d 229, 231-32 (Colo. 1992).

not allege in his amended complaint that he had lost any earned-time credits as a result of his COPD conviction, the Attorney General states that under Corrections Department policy his COPD conviction made him temporarily ineligible to receive additional earned-time credits. Thus, according to the Attorney General, Mr. Marshall's retaliation claim is barred by *Heck* because a judgment in his favor would necessarily imply the invalidity of his COPD conviction and of the resulting loss of his earned-time-credit eligibility.

The Attorney General has not shown, however, that a claim of improper deprivation of earned-time-credit *eligibility* is a core habeas claim (thus triggering application of *Heck*)—that is, the Attorney General has not explained why restoration of that eligibility would necessarily entitle Mr. Marshall to immediate or speedier release from prison. *See Wilkinson*, 544 U.S. at 82. In this regard, we are concerned that another filing by the Attorney General in a different appeal appears to contend that a claim for loss of earned-time-credit eligibility cannot be brought in a habeas proceeding.[4] In *Frazier v. Jackson*, 385 F. App'x 808, 809 (10th Cir. 2010), *cert. denied*, 79 U.S.L.W. 3399 (U.S. Jan. 10, 2011) (No. 10-6985), a prisoner sought a certificate of appealability from this court to appeal the district court's denial of his habeas application. The prisoner in *Frazier* challenged on due-process grounds two COPD convictions that made him

---

[4]     That brief and the Attorney General's brief on this appeal were filed by the same Assistant Attorney General within a month of each other.

temporarily ineligible to receive earned-time credits. *See id.* at 810. The
Attorney General's brief in *Frazier* described the extent of Colorado prison
authorities' discretion to award earned-time credits to, or withhold them from,
prisoners who are eligible to receive them—even indicating that prison authorities
have discretion to withdraw previously awarded earned-time credits. *See*
Response Brief in Accordance with the Court's Order Dated May 17, 2010 at 5-6,
*Frazier v. Jackson*, No. 09-1429 (10th Cir. June 11, 2010). The Attorney General
asserted that Colorado prisoners therefore have no entitlement to earned-time
credits. *See id.*

Hence, we are reluctant to embrace the Attorney General's alternative *Heck*
argument without further clarification of his position concerning prisoners' rights
with respect to earned-time credits. That clarification is best obtained through
proceedings in district court. We therefore reverse the district court's dismissal
of Mr. Marshall's retaliation claim and remand to the district court for further
consideration of that claim.

## *Conclusion*

The judgment of the district court is AFFIRMED in part and REVERSED
in part, and REMANDED to the district court for further consideration consistent

with this order and judgment. Mr. Marshall's motion for appointment of counsel is DENIED. His motion to proceed on appeal without prepayment of the filing fee is GRANTED.

Entered for the Court

Harris L Hartz
Circuit Judge
