FILED
United States Court of Appeals
Tenth Circuit

February 6, 2019

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MURTAZA ALI,

    Plaintiff - Appellant,

v.

DUSTIN DUBOISE, Dep. Sheriff, Tulsa
County Jail; TRAVIS LAMBERT, Det.
Officer, Tulsa Cty, Jail; GARY KAISER,
Sgt., Tulsa, County Jail; JOHN DOE, Det.
Officer at Tulsa County Jail; ARMOR
CORRECTIONAL HEALTH SERVICES,
INC., Medical Provider, Tulsa County Jail,

    Defendants - Appellees.

No. 17-5128
(D.C. No. 4:16-CV-00027-CVE-HE)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **EID**, **KELLY**, and **O'BRIEN**, Circuit Judges.
_____

    Murtaza Ali, proceeding pro se, appeals the district court's dismissal of claims

he brought under 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of*

*Federal Bureau of Narcotics*, 403 U.S. 388 (1971), against jail officials and a jail

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

health-care provider. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm in part, reverse in part, and remand for further proceedings.

## BACKGROUND

At the time of the events forming the basis of his complaint, Ali was detained as a federal prisoner at the Tulsa County Jail. In his Third Amended Civil Rights Complaint he asserted claims against defendant Dustin Duboise for alleged violations of his First Amendment right to freely exercise his religion; against defendants Travis Lambert, Gary Kaiser, and Duboise for the alleged use of excessive force; and against defendant Armor Correctional Health Services, Inc. (Armor) for alleged deliberate indifference to his serious medical needs. The district court dismissed without prejudice the deliberate-indifference claim against Armor, all official-capacity claims asserted against the defendants, and the excessive-force claims against Kaiser and Duboise. It dismissed the free-exercise claim against Duboise and the excessive-force claim against Lambert with prejudice, based on qualified immunity. In this appeal, Ali challenges the district court's dismissal of his excessive-force claims against Duboise, Kaiser, and Lambert, and the dismissal of his First Amendment free-exercise claim against Duboise.

### 1. Facts Supporting Free-Exercise Claim

In Count I of the Complaint Ali alleged facts underlying both his free-exercise and excessive-force claims against Duboise. The Complaint alleges that on the afternoon of October 17, 2015, as part of his Islamic religious obligation to pray five times each day, Ali was getting ready to pray in his cell with a fellow federal

2

detainee. Duboise opened the cell door and asked him what they were doing. Ali said they were getting ready to pray in the cell because a Christian service was being conducted in the multi-purpose room. Duboise told them they could not both perform their prayers in Ali's cell, and would have to pray outside. Ali asked him to state a place where they could conduct their prayers. Duboise did not respond to this request, but became angry and stated, "I will lock you up!" R., Vol. 2 at 335 (Compl. at 4).[1]

Ali responded that there was no legitimate reason to lock him up, because he had not violated any rule. Duboise then "pushed Ali's chest with his left arm, causing [his] back to be slammed into the cell wall." Id.[2] Ali told Duboise he wanted a supervisor called so that he could report the assault and file criminal charges against Duboise. In response, Duboise yelled, "Look at the badge . . . It states Deputy Sheriff, back up, or I will f--- you up and place you under arrest!" Id. Duboise then shut the cell door and locked Ali in the cell until later that afternoon.

## 2. Facts Supporting Excessive-Force Claim

Later that same day, Ali told an officer at the jail that he wanted to speak with a shift supervisor regarding Duboise's alleged violation of his civil rights and to

---

[1] In quoting the Complaint, we have modified Ali's occasional use of all-caps style. We have also modified the expletives used in the Complaint.

[2] We note that in attachments to the Complaint, which are dated closer to the events in question than the Complaint, Ali twice described Duboise's actions as "causing [him] to back up into the wall," rather than "slamming" him into the wall. R., Vol. 2 at 353 (Compl., Ex. 5 at 1); id. at 356 (Compl., Ex. 6 at 2).

press criminal charges against Duboise. Approximately fifteen minutes later, defendant Lambert and another officer arrived in the sally port in Ali's unit. Ali entered the sally port when its door opened. Noticing him there, Lambert "pointed a taser at Ali's back side and shouted, 'Put your f---ing hands up!'" *Id.* at 337 (Compl. at 6). He also told Ali to turn around. Ali raised his hands and turned to face Lambert as ordered.

The Complaint alleges Lambert "then approached Ali and violently grabbed Ali by his left arm and jerked Ali back onto the unit and vigorously pushed Ali's face first on the . . . control desk, while simultaneously twisting Ali's left arm behind his back." *Id.* Ali offered no resistance, but protested Lambert was using excessive force on him. Lambert responded, "I haven't used excessive force yet mother f---er, I will show you excessive force." *Id.* Lambert allegedly then "continued to violently jerk Ali towards the stairs by his arms hand-cuffed behind his back . . . causing him to [lose] balance and fall on the stairs head first." *Id.* Lambert "dragg[ed] Ali's prone body up the stairs by violently jerking [him]," despite Ali's shouting that he was hurt. *Id.*

Lambert continued to drag Ali up the stairs, "while Ali lay flat, prone on his face and chest." *Id.* at 338 (Compl. at 7). When Ali had been dragged approximately half-way up the stairs, another officer told Lambert to stop, saying they needed to take Ali to medical because he was hurt. Lambert and the other officer then dragged Ali back down the stairs while he lay prone and was held by his arms, which were handcuffed behind his back.

4

At the bottom of the stairs defendant Kaiser took over for Lambert. Kaiser and the other officer dragged Ali to the exit gate of the Unit, not allowing him to regain his footing. Ali was shouting in pain but offered no resistance. When the Unit gate opened the officers "made Ali stand up and forcefully pushed Ali's handcuffed arms that were behind his back, in a way to hyperextend them above his head, while Ali's neck was being pushed by [the other officer] and Kaiser, causing excruciating pain to Ali's handcuffed wrist, elbows and shoulders." *Id.* at 338 (Compl. at 7). Kaiser and the other officer then dragged Ali to the medical unit. When they arrived at the medical unit Ali told them they would not get away with assaulting him and warned them to stop hurting him. In response, Kaiser "deliberately with malicious intent to cause pain and injury pushed Ali's left wrist upwards, in order to be crushed by the handcuffs, causing excruciating pain and shock to Ali from wrist to left shoulder." *Id.* Kaiser asked him, "How you like that[?]" *Id.* at 339 (Compl. at 8).

In the medical unit, Ali was diagnosed with "apparent injuries to left shoulder i.e. redness," and "deformity to left shoulder blade." *Id.* He was given ibuprofen for his pain. Kaiser then escorted him, handcuffed, to segregation, saying he should be kept there for three weeks and "should heal up from his injuries by then." *Id.* at 340 (Compl. at 9). Ali claims that as the result of the alleged assault he suffered from "physical injury to left shoulder, laceration to right foot, contusion and bruising to right elbow and both wrists, swelling of left knee, numbness to both wrists and

5

ongoing pain to left shoulder and shoulder blade, and ongoing numbness to left wrist." *Id.*[3]

### 3. District Court's Decision

The district court determined Ali had plausibly alleged that Duboise intentionally interfered with and substantially burdened his First Amendment rights. But it granted qualified immunity for Duboise, reasoning Ali failed to show that it was clearly established that Duboise's actions violated the First Amendment.

The district court further determined Ali's allegations against Duboise and Kaiser did not plausibly allege an excessive-force claim, but he had sufficiently alleged an excessive-force claim against Lambert. It then granted qualified immunity for Lambert, reasoning Ali had failed to identify a case that would have placed Lambert on notice that his actions were unlawful.[4]

---

[3] At the district court's direction the defendants filed a Special Report. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978). The *Martinez* report presents a different account of events than that provided in the Complaint. See R., Vol. 1 at 121-23. But as the district court recognized, a *Martinez* report cannot be used to resolve factual disputes at the motion-to-dismiss stage. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).

[4] The district court also determined that Ali failed to state any official-capacity claims against the defendants, any due process claims against Kaiser and Duboise, or any valid claim under RLUIPA. Those determinations are not challenged in this appeal.

# ANALYSIS

## 1.  Standard of Review

We review de novo a district court's dismissal of a claim under Fed. R. Civ. P. 12(b)(6).  *See Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010).  The court's function is "to assess whether the plaintiff's amended complaint alone is legally sufficient to state a claim for which relief may be granted."  *Id.* (internal quotation marks omitted).  In doing so, we accept all well-pleaded allegations as true and construe them in the light most favorable to Ali.  *See id.*  And because Ali is proceeding pro se, we liberally construe both his amended complaint and his arguments on appeal.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (recognizing pro se litigant's pleadings are "held to a less stringent standard").

Our broad reading of his complaint, however, does not relieve Ali of "the burden of alleging sufficient facts on which a recognized legal claim could be based."  *Id.*  To avoid dismissal, his amended complaint must contain enough facts to state a claim for relief that is "plausible on its face."  *Peterson*, 594 F.3d at 727 (internal quotation marks omitted).  In reviewing a dismissal based on qualified immunity, we consider "(1) whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and (2) whether the right at issue was clearly established."  *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013) (internal quotation marks omitted).

## 2.  First Amendment Claim

The district court dismissed Ali's First Amendment claim against Duboise, reasoning that his actions did not violate clearly established law.  Ali argues it was

7

clearly established that Duboise's actions—telling him to pray outside his cell and responding to his request for a more specific location to pray with threats, expletives, a "push," and a temporary lock down—violated his First Amendment rights. "A plaintiff may show clearly established law by pointing to either a Supreme Court or Tenth Circuit decision, or the weight of authority from other courts, existing at the time of the alleged violation." *T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017), *cert. denied*, 138 S. Ct. 1270 (2018).  Although Ali cited Supreme Court and Tenth Circuit cases, the district court concluded these merely "establish[ed] the general proposition that the government cannot substantially burden an inmate's religious exercise absent a legitimate penological interest."  R., Vol. 2 at 492 (Order at 23). The court concluded that the cases did not put Duboise on notice that his conduct would violate the First Amendment.

The Supreme Court has stated on numerous occasions that "clearly established law should not be defined at a high level of generality" but must be "particularized to the facts of the case."  *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam) (internal quotation marks omitted).  Although a plaintiff need not identify "a case directly on point, . . . existing precedent must have placed the statutory or constitutional question beyond debate."  *Mullinex v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam).  The Supreme Court and Tenth Circuit cases Ali cites, *see* Aplt. Opening Br. at 8-10, do not clearly establish a constitutional violation on facts even remotely similar to Duboise's alleged conduct.  Nor was it "obvious" from prior case law establishing the contours of the right that Duboise's actions would violate Ali's

8

First Amendment rights. *See White*, 137 S. Ct. at 552. We therefore affirm the dismissal of the free-exercise claim, based on qualified immunity.

### 3. Excessive-Force Claims

"The core inquiry for an Eighth Amendment excessive force claim is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Serna v. Colo. Dep't of Corrs.*, 455 F.3d 1146, 1152 (10th Cir. 2006) (internal quotation marks omitted). "The Tenth Circuit has articulated two 'prongs' that a plaintiff must show to prevail on [an Eighth Amendment excessive-force] claim: (1) that the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and (2) that the officials acted with a sufficiently culpable state of mind." *Id.* (internal quotation marks omitted).

### A. Duboise

Ali argues that because Duboise acted maliciously and sadistically to cause harm, and responded to an inquiry about prayers with physical force, the fact that the force he used may have been de minimis does not allow him to escape liability. The Supreme Court has suggested that even a de minimis use of physical force may violate the Eighth Amendment if it is "of a sort repugnant to the conscience of mankind." *Hudson v. McMillian*, 503 U.S. 1, 10 (1992). But the quantum of force Duboise allegedly used here is not the sort that is repugnant to the conscience of mankind. *See id.* at 9 ("[N]ot . . . every malevolent touch by a prison guard gives rise to a federal cause of action," and "[n]ot every push or shove . . . violates a prisoner's constitutional rights" (internal quotation marks omitted)); *see also Wilkins v. Gaddy*,

559 U.S. 34, 38 (2010) ("An inmate who complains of a push or shove that causes no discernable injury almost certainly fails to state a valid excessive force claim." (internal quotation marks omitted)). We therefore affirm the dismissal of the excessive-force claim against Duboise.

### B. Kaiser

The district court determined that "the force used by Kaiser was minimal even if unnecessary and employed with a sufficiently culpable state of mind." R., Vol. 2 at 489 (Order at 20). As the district court recognized, and we agree, the facts alleged show a sufficiently culpable state of mind to survive a motion to dismiss. As for objective harmfulness, Ali does not merely allege that Kaiser handcuffed him, *contra* Tulsa Cty. Aplee. Br. at 17, but that he twice deliberately and unnecessarily manipulated Ali's arms or shoulders, while he was handcuffed, in a way that caused excruciating pain.[5] This is more than a de minimis use of physical force, and represents sufficient harm to state a constitutional claim. Ali's allegations against Kaiser sufficiently state a claim for violation of Eighth Amendment law prohibiting the use of excessive force, and we therefore reverse the dismissal of this claim.[6]

---

[5] We thus distinguish handcuffing-only excessive force claims arising in the Fourth Amendment context, which require the plaintiff to show more than de minimis injury from the application of handcuffs. *See, e.g.*, *United States v. Rodella*, 804 F.3d 1317, 1326-27 (10th Cir. 2015).

[6] We express no opinion concerning whether Kaiser's actions violated clearly established law. That issue is not presented in this appeal.

## C. Lambert

The district court determined the allegations against Lambert were sufficient to plausibly allege an excessive-force claim. *See* R., Vol. 2 at 488 (Order at 19). We agree. But the district court further determined Ali had failed to identify a "case that would have put Lambert on notice that his conduct . . . would violate the Eighth Amendment's prohibition on the use of excessive force." *Id.* at 492 (Order at 23). We conclude, however, that clearly established law made it clear Lambert's alleged conduct was unlawful.

In *Wilkins*, for example, the prisoner plaintiff alleged that a corrections officer, apparently angered by his request for a grievance form, had snatched him off the ground and slammed him onto the concrete floor, then proceeded to "punch, kick, knee and choke him" until restrained by another officer. *Wilkins*, 559 U.S. at 35. The federal district court dismissed the prisoner's excessive-force claim, reasoning that he had failed to allege more than a de minimis injury, and the Court of Appeals affirmed. *See id.* at 35-36. But the Supreme Court, stating that "[t]he core judicial inquiry . . . was not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm," reversed. *Wilkins*, 559 U.S. at 37 (internal quotation marks omitted).

Although the facts involving Lambert's alleged conduct are not identical to those in *Wilkins*, there are significant similarities. In both cases, the plaintiff allegedly was thrown or caused to fall, either onto the floor or stairs. After the

11

plaintiff fell, the physical abuse continued. In Ali's case, he further alleges that he was not resisting the officer's actions, the officer used abusive language, and the officer's conduct resulted in significant injuries to him. We conclude the alleged conduct, which must be taken as true at this stage, states a claim for violation of Ali's clearly established Eighth Amendment rights. We therefore reverse the dismissal of Ali's excessive-force claim against Lambert.

## CONCLUSION

We reverse the district court's dismissal of Ali's excessive-force claims against defendants Kaiser and Lambert, and remand for further proceedings concerning those claims. We affirm the remainder of the district court's judgment.

Entered for the Court


Allison H. Eid
Circuit Judge

12