**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 30, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

LISA LEDERHOS SWEESY, Trustee
and Conservator of the El Dean
Lederhos Living Trust,

     Plaintiff-Appellant,

v.

SUN LIFE ASSURANCE COMPANY
OF CANADA (USA); FIDELITY &
GUARANTY LIFE INSURANCE
COMPANY, f/k/a Americom Life and
Annuity Insurance Company,

     Defendants-Appellees,

and

LAURA GENIEVA DAVALOS;
JACKSON NATIONAL LIFE
INSURANCE COMPANY, d/b/a
Jackson National Life Distributors,
LLC; DOES 1–3,

     Defendants.

Nos. 14-2016; 14-2094
(D.C. No. 1:13-CV-01027-WJ-LAM)
(D.N.M.)

**ORDER AND JUDGMENT**[*]

Before **TYMKOVICH**, Chief Judge, **GORSUCH** and **HOLMES**, Circuit Judges.

---

[*]     This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

Plaintiff-Appellant Lisa Lederhos Sweesy appeals from the district court's orders granting motions to dismiss filed by Defendants-Appellees Sun Life Assurance Company ("Sun Life") and Fidelity & Guaranty Life Insurance Company ("FG"). Ms. Sweesy brought claims of fraud, elder abuse, unjust enrichment, and breach of fiduciary duty in her role as the conservator and successor trustee of the El Dean Lederhos Living Trust ("Lederhos Trust"). On appeal, Ms. Sweesy argues that the district court erred in dismissing her claims as time-barred under the four-year limitations period specified in N.M. Stat. Ann. § 37-1-4. She also contends that the district court erred in declining to afford her the benefit of the doctrine of equitable tolling. Exercising jurisdiction under 28 U.S.C. § 1291, we **affirm** the district court's dismissal of Ms. Sweesy's claims.

## I

In the early 2000s, Defendant Laura Davalos commenced a series of business transactions with Ms. Sweesy's sixty-six-year-old father, El Dean Lederhos. Mr. Lederhos was apparently the original trustee of the Lederhos Trust.[1] Ms. Davalos, duly licensed as an insurance agent in California and New

---

[1] The amended complaint—i.e., the operative pleading here—is not clear regarding the structure of the Lederhos Trust or the precise circumstances under which Ms. Sweesey came to be the successor Trustee. However, the district court inferred from the amended complaint's averments that Mr. Lederhos was the original trustee of the Lederhos Trust. Ms. Sweesey has not disputed this inference. Accordingly, we accept this inference as well.

2

Mexico, held herself out to Mr. Lederhos as a representative of Sun Life, FG, and Jackson National Life Insurance Company ("Jackson National"). Purporting to act in that capacity, Ms. Davalos sold Mr. Lederhos several annuities issued by these insurers. Mr. Lederhos was relatively financially secure at the outset of their business relationship; in this regard, he had "fully paid for" his California home and "had sufficient personal funds for retirement." Aplt. App. at 24 (First Am. Compl., filed Oct. 23, 2013).

Over the next several years, Ms. Davalos allegedly "solicited, induced and accepted loans [and] monetary gifts . . . in the form of personal checks" from Mr. Lederhos, "all while [he] was suffering from the onset of dementia and Alzheimer's [D]isease." *Id.* at 26. She relocated to New Mexico during that time period and allegedly used "proceeds that she had received from churning the Lederhos accounts" to purchase property. *Id.* at 27. Ms. Davalos continued to accept wire-transferred funds from Mr. Lederhos until approximately May of 2008. According to Ms. Sweesy, by that point, Mr. Lederhos had lost his home and most of his savings.

On June 19, 2008, Philip Sweesy (Ms. Sweesy's husband) filed a "Report of Suspected Violation" on Mr. Lederhos's behalf with the California Department of Insurance ("CDOI"), citing the following problems:

> The agent [i.e., Ms. Davalos] has methodically defrauded the complainant [i.e., Mr. Lederhos] of over $600,000 beginning in 2001. Complainant is 73 years old, the agent has charged to the

3

complainant[']s charge card without authorization, has filled out withdraw paperwork from the insurance annuities she wrote and taken the money as "loans." Helped the complainant obtain a home loan on his free and clear home and took the money as a "loan[.]" Has had the complainant wire over $83,000 to her bank in [New Mexico] over the last year over and above the $250,000 she obtained from the complainant[']s home loan. . . . At this time we only know of about $600,000 that is missing[;] it looks like there may be more.

*Id.* at 121 (Report of Suspected Violation, filed June 19, 2008); *see also id.* at 120 (providing complainant name of Dean Lederhos). In addition, the report urged that the insurers "should be held responsible for [Ms. Davalos's] actions." *Id.* at 121. The CDOI investigated the Davalos-Lederhos transactions and, based on its findings, revoked Ms. Davalos's California insurance license in October of 2010.

During the pendency of the CDOI's investigation—specifically, on July 30, 2009—Mr. Lederhos passed away. His death certificate specified the cause of death as acute hemorrhagic stroke. Ms. Sweesy later became the conservator of the Lederhos Trust.

On May 21, 2013, Ms. Sweesy filed a complaint in New Mexico state court, bringing several claims against Ms. Davalos, the three insurers (i.e., Sun Life, FG, and Jackson National), and "Does 1 through 3." *Id.* at 10 (Compl., filed May 21, 2013). Her lawsuit was predicated on the notion that Ms. Davalos swindled Mr. Lederhos into purchasing annuities from the insurers. While still in state court, Ms. Sweesey amended her complaint. Several months later, Sun Life removed the action to federal court on diversity grounds, and then sought

4

dismissal of the action on November 7, 2013.

In support of its motion to dismiss, Sun Life argued that Ms. Sweesy's claims were barred by New Mexico's four-year limitations period. *See* N.M. Stat. Ann. § 37-1-4. Sun Life contended that Mr. Lederhos should have discovered the basis for any claim against Sun Life by 2008 "at the latest," Aplt. App. at 74 (Sun Life Mot. to Dismiss, filed Nov. 7, 2013), and that the May 21, 2013, filing of her lawsuit postdated New Mexico's limitations deadline. Shortly thereafter, FG also moved to dismiss for substantially the same reasons.

In 2014, the district court granted the dismissal motions filed by Sun Life and FG. The court applied New Mexico's discovery rule for claim accrual (which we discuss below) by inquiring into Mr. Lederhos's knowledge of the pertinent facts; it observed that Ms. Sweesy—who was prosecuting the suit in a representative capacity, as successor trustee and conservator of her father's trust—had "provide[d] no binding precedent which demonstrate[d] that *her* personal knowledge of the claims [wa]s the proper standard." *Id.* at 192 (Mem. Op. & Order on Sun Life Mot., filed Jan. 6, 2014) (emphasis added); *see id.* at 231 (Mem. Op. & Order on FG Mot., filed Mar. 12, 2014) ("[T]he Court has already ruled that for the purposes of the discovery rule, Mr. Lederhos' knowledge *not* Plaintiff's knowledge is the relevant consideration . . . ."). Viewing the limitations issue thusly, the court ruled that all claims against Sun Life and FG for injuries to the Lederhos Trust accrued by December 31, 2008, at

5

the very latest; therefore, Ms. Sweesy's failure to file suit by December 31, 2012

(i.e., four years later) rendered the action untimely. The court also determined

that equitable tolling was unavailable to Ms. Sweesy under the circumstances of

this case.

Ms. Sweesy filed timely notices of appeal to challenge both dismissal

orders. We consolidated the two appeals for our review.[2]

---

[2]    It is axiomatic that, without a proper certification under Federal Rule
of Civil Procedure 54(b), "any order, however designated, which adjudicates
fewer than all of the claims or the liabilities of all of the parties, is not a final
appealable order." *Atiya v. Salt Lake Cty.*, 988 F.2d 1013, 1016 (10th Cir. 1993).
Regrettably, Ms. Sweesy did not initially take heed of this proposition; her efforts
at piecemeal appellate litigation engendered a jurisdictional imbroglio. For
clarity's sake, we pause to very briefly summarize the procedural circumstances
that gave rise to our jurisdictional concerns and the basis for our appellate
jurisdiction. Sun Life's motion to dismiss was the first filed *and* granted by the
district court. In response, Ms. Sweesy initially sought to appeal from the court's
dismissal order involving only Sun Life. In contemplation of filing this appeal,
Ms. Sweesy had moved the court to dismiss Jackson National *without* prejudice,
and the court had granted the motion. FG, however, remained a defendant in the
action. On the other hand, nominal defendants Ms. Davalos and the Does 1–3 had
not been served; Ms. Sweesy filed a notice of voluntary dismissal without
prejudice with respect to them. FG subsequently filed a motion to dismiss on
statute-of-limitations grounds, and the court granted the motion. The court then
purported to enter final judgment.

From the beginning, the posture of the district court litigation caused our
court to question the foundation for appellate jurisdiction. Indeed, shortly after
Ms. Sweesy filed her notice of appeal relative to only the district court's
disposition of Sun Life's motion to dismiss, our clerk's office expressed
concern—through a show-cause order—regarding this court's jurisdiction over
Ms. Sweesy's appeal; the appeal clearly did not appear to arise from a district
court adjudication of all claims regarding all parties, given that FG was still
litigating before the district court. Then, after the district court ruled on FG's
motion to dismiss and purported to enter a final judgment, our clerk's office again

(continued...)

6

## II

We review Rule 12(b)(6) dismissal orders de novo, employing the same standard used by the district court.  *See Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1223 (10th Cir. 2009); *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007).  "We can affirm on any grounds supported by the record."  *Stan*

---

[2](...continued)
(through another show-cause order) sounded a jurisdictional alarm.  In particular, it noted that the court's dismissal of Jackson Life—a served party—had been *without* prejudice.  In this regard, our caselaw is clear that "when a plaintiff voluntarily requests dismissal of her remaining claims without prejudice in order to appeal from an order that dismisses another claim with prejudice, . . . the order is not 'final' for purposes of [28 U.S.C.] § 1291."  *Cook v. Rocky Mountain Bank Note Co.*, 974 F.2d 147, 148 (10th Cir. 1992); *accord Heimann v. Snead*, 133 F.3d 767, 769 (10th Cir. 1998) (per curiam); *see also Eastom v. City of Tulsa*, 783 F.3d 1181, 1184 (10th Cir. 2015).

Ultimately, the district court did enter a Rule 54(b) certification.  *See* Aplt. App. at 252–53 (54(b) J., filed May 6, 2014) (noting, *inter alia*, that "there is nothing further that can be done by the District Court in this case," and "the most expeditious manner of bringing this case to a complete and full resolution is to allow Plaintiff the opportunity to appeal . . . the District Court's ruling on the statute of limitations issue"; and, in conclusion, stating, "the Court expressly determines that there is no just reason to delay an appeal of the Court's orders dismissing Defendants Sun Life and [FG] with prejudice").  And we conclude that the district court's rulings have "put[ ] the litigants 'effectively out of court'" on the limitations issue, *St. John v. Int'l Ass'n of Machinists & Aerospace Workers*, 139 F.3d 1214, 1217 (8th Cir. 1998) (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 713 (1996)); *accord Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1209 n.1 (10th Cir. 2000), and that "the practical effect of the District Court's dismissal order[s] [on time-bar grounds] is the termination of the entire case in Federal District Court," *Jicarilla Apache Tribe v. United States*, 601 F.2d 1116, 1124 (10th Cir. 1979); *accord Moya v. Schollenbarger*, 465 F.3d 444, 453 (10th Cir. 2006).  Ms. Sweesey thereafter filed a notice of appeal from the court's Rule 54(b) judgment—putting properly before us for the first time the court's disposition of FG's motion to dismiss.  Her two pending appeals were consolidated for procedural purposes.

*Lee Media, Inc. v. Walt Disney Co.*, 774 F.3d 1292, 1296 (10th Cir. 2014); *accord*

*Elwell v. Byers*, 699 F.3d 1208, 1213 (10th Cir. 2012); *see also Farmer v. Banco*

*Popular of N. Am.*, 791 F.3d 1246, 1250 (10th Cir. 2015).

In our review, "[a]ll well-pleaded facts, as distinguished from conclusory

allegations, are accepted as true and viewed in the light most favorable to the

nonmoving party." *Teigen*, 511 F.3d at 1078. We ultimately ask whether the

complaint is facially plausible—that is, whether it "contain[s] sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007)); *accord Rosenfield v. HSBC Bank, USA*, 681 F.3d

1172, 1178 (10th Cir. 2012). Our function at this stage "is not to weigh potential

evidence that the parties might present at trial, but to assess whether the

plaintiff's amended complaint alone is legally sufficient to state a claim for which

relief may be granted." *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010)

(quoting *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991)); *accord Brokers'*

*Choice of Am., Inc. v. NBC Universal*, 757 F.3d 1125, 1135–36 (10th Cir. 2014).

"Generally, a district court must convert a motion to dismiss into a motion

for summary judgment when matters outside the pleadings are relied upon." *Utah*

*Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253 (10th Cir. 2005);

*accord Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th

Cir. 2013). However, as relevant here, "[a] district court may consider documents

8

(1) referenced in a complaint that are (2) central to a plaintiff's claims, and (3) indisputably authentic when resolving a motion to dismiss without converting the motion to one for summary judgment." *Thomas v. Kaven*, 765 F.3d 1183, 1197 (10th Cir. 2014); *accord Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007). Matters of which the court is entitled to take judicial notice, such as certain documents contained in the public record, may also be reviewed at the motion-to-dismiss juncture without converting the filing into a motion for summary judgment. *See In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1108 (10th Cir. 2015); *Binford v. United States*, 436 F.3d 1252, 1256 n.7 (10th Cir. 2006).

### III

### A

In our view, the district court properly analyzed whether Ms. Sweesy's claims against Sun Life and FG are time-barred and correctly determined that they are. We conclude, therefore, that Ms. Sweesy's action was appropriately dismissed for failure to state a claim under Rule 12(b)(6).

**1**

New Mexico supplies the operative statute of limitations,[3] and we begin by examining its terms. In New Mexico, actions founded upon "injuries to property or for the conversion of personal property or for relief upon the ground of fraud" must be brought within four years.[4] N.M. Stat. Ann. § 37-1-4. The question of "when a cause of action accrues under a statute of limitations is a judicial

---

[3]     "A federal court sitting in diversity applies state law for statute of limitations purposes." *Burnham v. Humphrey Hosp. Reit Tr., Inc.*, 403 F.3d 709, 712 (10th Cir. 2005); *accord Elm Ridge Expl. Co. v. Engle*, 721 F.3d 1199, 1210 (10th Cir. 2013). Consequently, we apply New Mexico law to the limitations question raised in this appeal.

[4]     In her Opening Brief, Ms. Sweesy intimates that, if the district court properly focused its analysis under the discovery rule on her father's knowledge, it should have given her the benefit of New Mexico's six-year statute of limitations for written contracts, *see* N.M. Stat. Ann. § 37-1-3, "given that [her father] had privity of contract with each and every Defendant," Aplt. Opening Br. at 20. This contention is, to say the least, puzzling since Ms. Sweesy has never asserted any contractual claims in this litigation and her claims sound in tort. However, we need not explore this matter further because, for at least two reasons, this argument is waived. First, Ms. Sweesy expressly and intentionally acknowledged that the four-year statute of limitations of § 37-1-4 is the operative one. *See* Aplt. App. 204 ("Plaintiff concedes the application of a four (4) year statute of limitations . . . ."); *see, e.g.*, *United States v. Cruz Rodriguez*, 570 F.3d 1179, 1182, 1184 (10th Cir. 2009) (where defendant "intentionally adopted a litigation position [in the district court] that was fundamentally inconsistent with" his appellate challenge, "conclud[ing] that [the defendant] waived appellate review of this argument by his intentional litigation decisions before the district court."). Second, Ms. Sweesy's contention is skeletal and conclusory—relying on no legal authority—and, consequently, is waived through inadequate briefing. *See, e.g.*, *United States v. Gordon*, 710 F.3d 1124, 1144 n.22 (10th Cir. 2013) ("As a general matter, his briefing on this issue is skeletal at best. We would be justified in refusing to address it on that grounds alone."); *United States v. Wilfong*, 551 F.3d 1182, 1188 (10th Cir. 2008) ("We find that Mr. Wilfong has waived his arguments due to inadequate briefing.").

10

determination." *Roberts v. Sw. Cmty. Health Servs.*, 837 P.2d 442, 446 (N.M. 1992). "Because New Mexico follows the 'discovery rule,' the cause of action does not accrue [for purposes of § 37-1-4] until the plaintiff discovers the fraud or conversion." *Wilde v. Westland Dev. Co.*, 241 P.3d 628, 635 (N.M. Ct. App. 2010); *see Gerke v. Romero*, 237 P.3d 111, 114–15 (N.M. Ct. App. 2010) (collecting cases). "Discovery," in this context, means the point at which the aggrieved party "discovers or with reasonable diligence should have discovered that a claim exists." *Roberts*, 837 P.2d at 449; *see Salopek v. Friedman*, 308 P.3d 139, 156 (N.M. Ct. App. 2013).

A court's prime consideration in applying the discovery rule "is the factual, not the legal, basis for the cause of action." *Christus St. Vincent Reg'l Med. Ctr. v. Duarte-Afara*, 267 P.3d 70, 77 (N.M. Ct. App. 2011) (quoting *Coslett v. Third St. Grocery*, 876 P.2d 656, 664 (N.M. Ct. App. 1994)). "This means that 'the statute of limitations is not tolled because a claimant does not have knowledge of the full extent of injury, but that the time period begins to run when the claimant has knowledge of sufficient *facts* to constitute a cause of action.'" *Yurcic v. City of Gallup*, 298 P.3d 500, 503 (N.M. Ct. App. 2013) (emphasis added) (quoting *Gerke*, 237 P.3d at 115). Thus, New Mexico's discovery rule "carries an inquiry obligation." *Williams v. Stewart*, 112 P.3d 281, 285 (N.M. Ct. App. 2005).

**2**

As pertinent here, in determining that Ms. Sweesy's claims against Sun

Life were barred by the statutory limitations period, the district court opined that New Mexico's claim-accrual jurisprudence required it to ask "when Mr. Lederhos 'discovered' the claim." Aplt. App. at 191. It likewise found that Ms. Sweesy's knowledge (as opposed to Mr. Lederhos's knowledge) was not the appropriate touchstone for its analysis. Ms. Sweesy was not suing in her own right (i.e., for some alleged personal injury) but rather as the successor trustee and conservator of the Lederhos Trust; consequently, according to the court, she was standing in the shoes of Mr. Lederhos for purposes of the litigation. In this regard, the court noted that "at least some of the claims accrued while Mr. Lederhos was still alive and acting as the trustee." *Id.* at 191–92. And it further explained, "New Mexico courts have held that where a party's right to recovery is based upon 'standing in the shoes' of another party, the statute of limitations for the party with the derivative right to recovery begins to run when the first party's claim accrues." *Id.* at 192. On the record before it—with an eye toward the amended complaint's allegation that Mr. Lederhos had lost his home and a large portion of his savings "[b]y 2008," *id.* at 27—the court ruled that any cause of action against Sun Life for injuries to Mr. Lederhos (i.e., the Lederhos Trust) "accrued no later than December 31, 2008," *id.* at 193. Consequently, the court concluded, the four-year limitations period set forth in § 37-1-4 expired on December 31, 2012—more than five months prior to the filing of Ms. Sweesy's complaint.

Later, the court applied a like rationale in deeming Ms. Sweesy's claims

12

against FG time-barred under the same statute. Specifically, it rejected Ms. Sweesy's contention that "she . . . did not have sufficient knowledge" to trigger the running of the limitations clock "until after the [CDOI] completed its investigation [of] Ms. Davalos in 2010." *Id.* at 231. The court reiterated its previous ruling that "for the purposes of the discovery rule, Mr. Lederhos' knowledge *not* [Ms. Sweesy's] knowledge is the relevant consideration." *Id.* Moreover, it did not deviate from its earlier stance that the end of 2008 commenced the four-year accrual period, stating in that respect that "New Mexico law is clear that a plaintiff need not know the full extent of her injuries . . . for her claims to accrue." *Id.*

The district court then acknowledged Ms. Sweesy's late-blooming argument that Mr. Lederhos's dementia called for an atypical discovery-rule analysis. In rebutting FG's motion to dismiss, Ms. Sweesy had averred for the first time that it was "clear . . . during the[ ] critical times"—i.e., "between April 21, 2006 and May 29, 2008"—that Mr. Lederhos "was mentally incapacitated so much so that it would be impossible for anyone . . . to establish what kind of knowledge [he] possessed to satisfy the applicable statute of limitations." *Id.* at 210 (Pl.'s Resp. to FG Mot., filed Feb. 18, 2014). But the court was not persuaded, and it explained its reasoning as follows:

> Plaintiff . . . makes the argument that because Mr. Lederhos was suffering from dementia due to Alzheimer's, no knowledge of any claims can be imputed to him. However, that is simply not the law on incapacitation. New Mexico law protects those who

13

are incapacitated, and therefore may not "discover" a claim, by tolling the statute of limitations for one year after the end of their disability. New Mexico law, however, does not state that if one is incapacitated to the point that [he] cannot discover a potential claim[] that the statute of limitation does not begin to run until [he is] no longer incapacitated. . . . Thus, Plaintiff's arguments regarding Mr. Lederhos' Alzheimer's even in the light most favorable to Plaintiff do not make her claims timely.

*Id.* at 231–32 (citations omitted).

**3**

On appeal, Ms. Sweesy reasons that the district court erred by focusing on the facts and circumstances known to Mr. Lederhos (as opposed to the facts and circumstances known to *her*) when it determined that the operative date of discovery of the claims was the end of 2008. The dispositive inquiry under Ms. Sweesy's formulation of New Mexico's discovery rule would be when "*Lisa Sweesy* knew or should have known about possible allegations against the [insurers]," Aplt. Opening Br. at 29 (emphasis added)—or, alternatively (assuming *arguendo* that Mr. Lederhos's awareness is the appropriate touchstone), when a hypothetical reasonable person suffering from Alzheimer's Disease knew or should have known of the factual basis for filing suit, *see id.* at 22 ("[T]he standard isn't just a 'reasonable person'[;] it is a reasonable person operating under the same conditions and circumstances which have never been demonstrated in this case.").

During oral argument, relative to her alternative contention, Ms. Sweesy explicitly characterized this case as one involving an issue of first impression: the

14

correct application of New Mexico's discovery rule under § 37-1-4 "in a situation where the reasonable person is suffering from dementia." Oral Arg. at 0:34. Reduced to its essence, her position is that New Mexico's discovery rule requires a court to utilize a *subjective*, not an objective, inquiry when determining if § 37-1-4's four-year limitations period has expired.

We reject Ms. Sweesy's contentions for the reasons explicated below.

**4**

**a**

To reprise, the statute of limitations for Ms. Sweesy's claims against Sun Life and FG instructs that "[actions] . . . brought for injuries to property or for the conversion of personal property or for relief upon the ground of fraud . . . [must be brought] within four years." N.M. Stat. Ann. § 37-1-4. This provision is considered a "catch-all statute of limitations." *Polaco v. Prudencio*, 242 P.3d 439, 440 (N.M. Ct. App. 2010).

New Mexico courts have long espoused the view that "[s]tatutes of limitation begin to run against *everyone* . . . when the cause of action accrues." *Slade v. Slade*, 468 P.2d 627, 631 (N.M. 1970) (emphasis added); *accord Gomez v. Chavarria*, 206 P.3d 157, 160 (N.M. Ct. App. 2009). Ms Sweesy filed suit in the course of "administer[ing] the estate of a[n] . . . adult individual," N.M. Stat.

15

Ann. § 46A-1-103(E) (defining "conservator")—namely, Mr. Lederhos.[5]  Thus, as the district court properly observed, Ms. Sweesy "stands in the shoes of Mr. Lederhos for the purposes of this lawsuit."  Aplt. App. at 192; *see Garcia v. Underwriters at Lloyd's London*, 156 P.3d 712, 714 (N.M. Ct. App. 2007) ("Standing in the shoes of the . . . Estate by virtue of an assignment of rights, Plaintiff sued Underwriters . . . for . . . violations of the [New Mexico] Unfair Insurance Practices Act . . . ."); *see also Restatement (Second) of Trusts* § 280 cmt. h (1959) (noting that a trustee "can proceed in [an] action [against a third party] as though [s]he were the owner of the claim which [s]he is enforcing").

Surveying "decisions of [New Mexico] courts," *In re Dittmar*, 618 F.3d 1199, 1204 (10th Cir. 2010) (quoting *Boehme v. U.S. Postal Serv.*, 343 F.3d 1260, 1264 (10th Cir. 2003)), resolving derivative (i.e., stands-in-the-shoes) claims, we are guided by New Mexico's insurance jurisprudence, where it is commonplace for litigants to be deemed standing in the shoes of others, *see Health Plus of N.M., Inc. v. Harrell*, 958 P.2d 1239, 1243 (N.M. Ct. App. 1998) ("By standing in the shoes of the insured, the insurance company has the same rights . . . as the insured."); *accord Salas v. Mountain States Mut. Cas. Co.*, 173 P.3d 35, 41 (N.M. Ct. App. 2007); *see also Am. Gen. Fire & Cas. Co. v. J.T. Constr. Co.*, 740 P.2d 1179, 1181 (N.M. Ct. App. 1987) ("[P]laintiff received an assignment of, and its

---

[5]     A trustee "includes an original trustee, an additional trustee, a successor trustee and a co-trustee."  N.M. Stat. Ann. § 46A-1-103(T).

16

complaint relies on, the worker's [i.e., the insured's] cause of action."). In this milieu, the discovery rule operates such that "[t]he statute of limitations begins to run on [the subrogee's] action against the third party tortfeasor when the *insured's* cause of action arises." *Health Plus*, 958 P.2d at 1243 (emphasis added); *accord Salas*, 173 P.3d at 43. The *insured's* knowledge (not the subrogee insurer's knowledge) of the factual basis for a lawsuit is therefore the critical focus of the limitations inquiry.

The decisions in this analogous context militate toward the view that Ms. Sweesy has no rights except for those that originally inured to the benefit of Mr. Lederhos; the financial injuries she now asserts resulted from conduct that allegedly deceived another, Mr. Lederhos. The insurance-law reference point therefore appears wholly appropriate in this situation, and it counsels in favor of calculating § 37-1-4's limitations period in light of Mr. Lederhos's awareness of the salient facts. Accordingly, the district court properly focused on Mr. Lederhos in determining when the limitations clock began to run.

**b**

Ms. Sweesy suggests that even if the district court was correct in focusing on Mr. Lederhos's knowledge, the discovery rule should operate differently where, as here, the aggrieved party was allegedly incapacitated by mental disease. The parties have identified no controlling New Mexico authority that speaks directly to these circumstances, and we likewise have unearthed none. However,

17

"we will not trouble our sister state courts every time" an appeal implicates a colorably novel question of state law. *Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007). Our customary practice, especially when the parties have not asked us to certify a question of state law—which the litigants here have not—"is to predict how that court would rule on the issue." *Lampkin v. Little*, 286 F.3d 1206, 1210 (10th Cir. 2002); *accord Cornhusker Cas. Co. v. Skaj*, 786 F.3d 842, 852 (10th Cir. 2015); *see also Roberts*, 837 P.2d at 446 ("In the absence of explicit instructions from the legislature, when a cause of action accrues under a statute of limitations is a judicial determination."). "The decision of an intermediate appellate state court 'is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Stickley v. State Farm Mut. Auto. Ins. Co.*, 505 F.3d 1070, 1077 (10th Cir. 2007) (quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940)); *accord Kokins v. Teleflex, Inc.*, 621 F.3d 1290, 1297 (10th Cir. 2010).

We predict that, under these factual circumstances, the New Mexico Supreme Court would adopt an objective standard for the application of the discovery rule under § 37-1-4—specifically, one that does not take into account the subjective circumstances, including mental incapacity, of Mr. Lederhos. In this regard, the New Mexico Court of Appeals in *Williams* has stated, "The standard of 'reasonable diligence' [inherent in the discovery rule] imports an

18

analysis of objectivity."  *Williams*, 112 P.3d at 285; *see Yurcic*, 298 P.3d at 506

(relying on authorities employing an objective standard in assessing when the

limitations period commenced); *see also ABC v. Archdiocese of St. Paul &*

*Minneapolis*, 513 N.W.2d 482, 488 (Minn. Ct. App. 1994) (applying "an

objective, reasonable person standard"); *Dalrymple v. Brown*, 701 A.2d 164, 167

(Pa. 1997) ("The standard of reasonable diligence is objective, not subjective.  It

is not a standard of reasonable diligence unique to a particular plaintiff, but

instead, a standard of reasonable diligence as applied to a 'reasonable person.'"

(quoting *Rendenz by Rendenz v. Rosenberg*, 520 A.2d 883, 886 (1987)).[6]

   In urging that New Mexico alters its discovery rule when the aggrieved

party has "psychological difficulties," Aplt. Opening Br. at 22, Ms. Sweesy relies

on the following text from the New Mexico Court of Appeals's decision in

*Martinez-Sandoval v. Kirsch*:

> The reasonable person who serves as the standard in this
> evaluation . . . is not a detached outside observer assessing the
> situation without being affected by it.  Rather, it is a reasonable
> person who has been subjected to the conduct which forms the
> basis for the plaintiff's complaint. . . .   [W]e look at a
> "reasonable person in the position of the Plaintiff [.]" . . .
> Accrual of the cause of action occurs when the ordinary

---

   [6]   An intermediate appellate court in Pennsylvania had previously
reached a similar conclusion.  *See E.J.M. v. Archdiocese of Phila.*, 622 A.2d
1388, 1393–94 (Pa. Super. 1993) ("[U]nder Pennsylvania law, [the] standard of
reasonable diligence is an objective or external one that is the same for all
individuals.  It is not a subjective one. . . .  For example,
Pennsylvania . . . specifically does not permit tolling during a period of
insanity . . . ." (citations omitted)).

19

> reasonable person who had been subject to the experience would have discovered that the injury was caused by that experience.

884 P.2d 507, 512 (N.M. Ct. App. 1994) (alterations in original) (first and second omissions in original) (quoting *Riley v. Presnell*, 565 N.E.2d 780, 785–86 (Mass. 1991)). While this language at first blush could conceivably suggest that New Mexico might be amenable to a subjective, personalized variant of the discovery rule, we are satisfied that such a reading of *Martinez-Sandoval* and, more generally, New Mexico law would be misguided.

The foregoing excerpt stems from a portion of the opinion leading up to the court's articulation of New Mexico's version of the discovery rule; notably, in this section, the court discussed the approach of Massachusetts's highest court in *Riley*. In that regard, the court explicitly noted the following: "Our discussion [of Massachusetts's rule in *Riley*, *inter alia*,] serves the purpose of clarifying what we are *not* deciding in this opinion." *Id.* at 511. The court explained that it was "discuss[ing this rule and] several others without adopting or rejecting the underlying legal theory." *Id.* After examining various approaches to the discovery rule, the court concluded that claim accrual "[could not] be delayed beyond the [applicable statutory deadline] on the ground that Plaintiff still may not have appreciated, in some sense, that [the defendant's] conduct was wrongful," *id.* at 513, due to incapacitation. Therefore, placed in proper context, the text of *Martinez-Sandoval* upon which Ms. Sweesy relies does not avail her and, more specifically, does not indicate that New Mexico has adopted a

20

subjective discovery rule. And Ms. Sweesy offers nothing more than barebones, conclusory arguments to the contrary.

For the first time in her reply brief, Ms. Sweesy suggests that the discovery-rule inquiry is resolved by our recent decision in *Bayless v. United States*, 767 F.3d 958 (10th Cir. 2014). *See* Aplt. Reply Br. at 7. We reject this argument for at least two reasons. First, given *Bayless*'s September 2014 date of issuance—one month before Ms. Sweesy filed her opening brief—it is beyond peradventure that any argument concerning this case was available to Ms. Sweesy at the inception of this appeal. Thus, "[b]ecause th[is] point[ ] w[as not] raised until the reply brief, we deem [it] waived for purposes of this appeal." *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 981 n.1 (10th Cir. 2014). Second, notwithstanding that preservation foible, *Bayless* patently does not benefit Ms. Sweesy based on its facts: that case concerned a litigant's prolonged, unsuccessful attempt to find "objective medical results" pertaining to her mystifying illness. 767 F.3d at 968–69. *Bayless* specifically addressed the challenges of applying limitations periods in the face of contradictory scientific evidence—which we lack on this record—and it expressly "only opine[d] with respect to the facts of Ms. Bayless' case." *Id.* at 970. It "d[id] not upend precedent . . . that 'compelling' or 'certain' proof of a cause is *not* a requirement before accrual may begin." *Id.* (emphasis added). And *Bayless* spoke only to the quantum of knowledge necessary to trigger the limitations clock in that particular

21

setting. In other words, *Bayless* does not shake our confidence in the district court's conclusion that *Mr. Lederhos*'s factual knowledge, viewed through a lens of objective reasonableness, started the clock in 2008—and it ended no later than December 31, 2012.

In sum, none of Ms. Sweesy's arguments persuade us that the New Mexico Supreme Court would employ a subjective test when applying the discovery rule to § 37-1-4.[7]

**c**

**i**

Bearing in mind that New Mexico's discovery rule does not ask when Mr. Lederhos became aware of the *legal* basis for any claims, we survey the pleadings to extract the key *factual* considerations. The amended complaint and associated public-record materials (of which we take judicial notice) reveal that (1) in the

---

[7]    We observe that New Mexico has chosen to address any inequities related to application of the statute of limitations to incapacitated persons through the specific tolling statutes that extend the limitations period by one year "after the termination of . . . incapacity," N.M. Stat. Ann. § 37-1-10, or by one year after the death of "the person entitled to a cause of action," *id.* § 37-1-11. These exceptions do not readily illuminate our threshold claim-accrual inquiry. That is because the exceptions speak to the point at which the limitations period for a claim *ends* under the circumstances of incapacitation or death, not the point at which the limitations period *begins*—that is, when the claim accrues—under such circumstances. *See Slade*, 468 P.2d at 631 ("Statutes of limitation begin to run against everyone, including minors, when the cause of action accrues, and tolling statutes only extend the time for completing the bar of the statute so that the minor shall have an opportunity to act for himself after the disability caused by his minority has been removed.").

22

early 2000s, Mr. Lederhos began purchasing Sun Life and FG insurance products through Ms. Davalos; (2) at that time (in 2001), his residence was fully paid for; (3) also at that time, he presumably knew that he possessed sufficient funds to sustain himself in retirement; (4) by 2008, he had somehow *lost* his home and most of his savings; and (5) by June 19, 2008, the nexus of such financial losses to Ms. Davalos's alleged fraudulent conduct was so patent that Mr. Lederhos's son-in-law requested on Mr. Lederhos's behalf that the CDOI investigate the matter. These facts leave no room for doubt that Mr. Lederhos experienced a profound change in financial status between the early 2000s and 2008—indeed, one so severe as to deprive him of his family home. They likewise clearly show that the connection between Ms. Davalos's alleged fraudulent conduct and this financial status change was sufficiently clear that it would have prompted a reasonable person to conduct an inquiry—in fact, it prompted Mr. Lederhos's son-in-law to seek relief from the California insurance authorities on his behalf.

At bottom, we conclude that Mr. Lederhos had or should have had sufficient knowledge by the end of 2008 to commence the running of the limitations clock. And we deem eminently reasonable the district court's observation that an objectively reasonable person "would begin an inquiry into why his investments failed so miserably that he was forced to sell his house." Aplt. App. at 194. Accordingly, we, too, would place the "start date" for the running of the limitations clock at the conclusion of 2008 at the latest. It follows

23

ineluctably that the statute of limitations expired four years thereafter, on December 31, 2012, which pre-dates the 2013 filing of the complaint in this lawsuit by more than five months.

**ii**

Next, we consult the two potentially applicable tolling statutes. Under N.M. Stat. Ann. § 37-1-10, an incapacitated party is permitted one year after the end of his incapacitation to file suit. "It is quite clear from a plain reading of Section 37-1-10 that, when the . . . limitations period in Section 37-1-[4] runs its full course during [incapacitation], Section 37-1-10 gives the [party] a year from [the end of incapacitation] within which to sue." *Gomez*, 206 P.3d at 160. If the four-year period specified in § 37-1-4 has not expired when incapacitation ends, he is afforded either up to "one year after" the end of incapacitation "or until [four] years after the [injury]—whichever computation of time gives [him] the most time to act." *Gomez*, 206 P.3d at 161.

Mr. Lederhos's alleged incapacitation—dementia and Alzheimer's—ended upon his death on July 30, 2009. Consequently, under § 37-1-10, the statute of limitations would extend to July 30, 2010. In assessing the "computation of time [that would] give[] the [party] the most time to act," *Gomez*, 206 P.3d at 161, the choice was between July 30, 2010, and December 31, 2012 (the default four-year period noted above). The latter option obviously provided more time. Yet, as noted, even if that were the operative date, Ms. Sweesy's claim would be time-

24

barred.

Looking to § 37-1-11, which applies when the claimant dies before the applicable statute of limitations has stopped running, we conclude that it does not alter our determination. It is clear that this statute only extends the period within which to file suit for "one year after such death." *Gallagher v. Santa Fe Fed. Emps.' Fed. Credit Union*, 52 P.3d 412, 417 n.3 (N.M. Ct. App. 2002) (quoting N.M. Stat. Ann. § 37-1-11). Thus, once again, the choice is between July 30, 2010, and December 31, 2012—and the 2012 date controls, with the consequence being that Ms. Sweesy's action was time-barred. In sum, even after consulting the two tolling statutes through which New Mexico has chosen to account for incapacitation or death, we conclude that the limitations period ended on December 31, 2012, and that Ms. Sweesy's subsequent filing of this lawsuit was untimely.

**B**

Ms. Sweesy contends that her otherwise tardy filing should have been excused by the doctrine of equitable tolling. "We review the district court's refusal to apply equitable tolling for an abuse of discretion." *Alexander v. Oklahoma*, 382 F.3d 1206, 1215 (10th Cir. 2004) (quoting *Garrett v. Fleming*, 362 F.3d 692, 695 (10th Cir. 2004)); *accord Barnes v. United States*, 776 F.3d 1134, 1148–49 (10th Cir. 2015). Under the abuse-of-discretion standard, we will not disturb the district court's decision unless we have "a definite and firm

25

conviction that the [district] court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Lorillard Tobacco Co. v. Engida*, 611 F.3d 1209, 1213 (10th Cir. 2010) (quoting *FDIC v. Rocket Oil Co.*, 865 F.2d 1158, 1160 n.1 (10th Cir. 1989)); *see Davis v. Mineta*, 302 F.3d 1104, 1111 (10th Cir. 2002) ("A district court abuses its discretion where it commits a legal error or relies on clearly erroneous factual findings, or where there is no rational basis in the evidence for its ruling." (citation omitted)).

Although we use a different analytical approach than the one employed by the district court,[8] *see Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130 (10th Cir. 2011) (noting this court's longstanding view that "we may affirm on any basis supported by the record"), we are satisfied that the court did not abuse its

---

[8]    More specifically, the district court resolved this issue by consulting "two tolling statutes that may apply to Mr. Lederhos," Aplt. App. at 195—that is, the two discussed above, N.M. Stat. Ann. § 37-1-10 and § 37-1-11.  Applying these statutes to Mr. Lederhos's circumstances, the court found that neither one could extend the filing deadline beyond 2010.  *See* Aplt. App. at 196 ("Neither of the equitable tolling doctrines arguably applicable to Plaintiff's claims extends to May 2013 . . . .").

Because New Mexico has defined equitable tolling as "a *nonstatutory* tolling theory which suspends a limitations period," *Ocana v. Am. Furniture Co.*, 91 P.3d 58, 66 (N.M. 2004) (emphasis added); *accord Gathman-Matotan Architects & Planners, Inc. v. Dep't of Fin. & Admin.*, 787 P.2d 411, 413 (N.M. 1990), we have approached the issue by conducting a nonstatutory, case-specific assessment.  In other words, we have considered whether this case qualifies as a "situation[ ] where circumstances beyond a plaintiff's control prevented the plaintiff from filing in a timely manner." *Slusser v. Vantage Builders, Inc.*, 306 P.3d 524, 528 (N.M. Ct. App. 2013).  We ultimately conclude that the case does not qualify and, for that reason, affirm the district court's refusal to equitably toll the statute of limitations.

26

discretion in rebuffing Ms. Sweesy's equitable-tolling arguments.

We must follow New Mexico's tolling rules because "they are 'an integral part of the several policies served by the statute of limitations.'" *State Farm Mut. Auto. Ins. Co. v. Boellstorff*, 540 F.3d 1223, 1228 (10th Cir. 2008) (quoting *Cook v. G.D. Searle & Co.*, 759 F.2d 800, 802 (10th Cir. 1985)). Among other things, in New Mexico, "[t]he purpose of equitable tolling is to give 'the plaintiff extra time if [s]he needs it. If [s]he doesn't need it[,] there is no basis for depriving the defendant of the protection of the statute of limitations.'" *Slusser*, 306 P.3d at 530 (quoting *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 452 (7th Cir. 1990)). New Mexico places the onus of justifying equitable tolling squarely on the plaintiff's shoulders. *See id.* at 528 (noting that "the party claiming that a statute of limitation should be tolled has the burden of alleging sufficient facts that if proven would toll the statute" (quoting *Ocana*, 91 P.3d at 65)); *accord Stringer v. Dudoich*, 583 P.2d 462, 463 (N.M. 1978). Therefore, even where tolling is available in principle, the plaintiff must convince the court that tolling should apply to the unique facts and circumstances of her lawsuit. The court undertakes a "case-by-case" inquiry as to whether the plaintiff has established "(1) that [s]he has been pursuing h[er] rights diligently, and (2) that some extraordinary circumstance stood in h[er] way." *Slusser*, 306 P.3d at 531.

Because Ms. Sweesy cannot prevail on the second prong of New Mexico's equitable-tolling standard—i.e., extraordinary circumstances—our analysis begins

27

and ends with it. *See Yang v. Archuleta*, 525 F.3d 925, 928 (10th Cir. 2008) ("[E]quitable tolling requires a litigant to establish *two* elements . . . ." (emphasis added)); *see also Sigala v. Bravo*, 656 F.3d 1125, 1129 (10th Cir. 2011) (rejecting equitable-tolling arguments based upon a litigant's "fail[ure] to meet his burden" on the second prong). At the outset, we note that Ms. Sweesey does not offer us any New Mexico legal authority that would permit us to take into account her personal circumstances in the equitable-tolling calculus, rather than those of Mr. Lederhos, despite the fact that she brings this action in a representative (not personal) capacity. However, even assuming *arguendo* that we may consider her circumstances, we conclude that Ms. Sweesy has not adduced sufficient facts to show that any "extraordinary event beyond . . . her control," *Slusser*, 306 P.3d at 530, precluded her from timely filing suit against Sun Life and FG. Accordingly, we hold that the district court properly declined to afford her the unusual relief of "suspend[ing] the statute of limitations." *Id*. at 528.

Ms. Sweesy contends that her tardiness should have been excused by the fact that she was called upon to "deal[ ] with both the collapse of her father's health and estate." Aplt. Opening Br. at 32. But she identifies no caselaw in support of the proposition that a New Mexico court might plausibly consider her personal circumstances "extraordinary"—nor, for that matter, does she expand her argument much beyond the admonition that "rigid application" of New Mexico's equitable-tolling standard "to this unusual set of facts . . . will establish a

28

precarious precedent." *Id.* at 33.

Having completed our study of the applicable equitable-tolling jurisprudence, we conclude that, while unfortunate and taxing, deaths in the family (and events incident thereto) do not qualify as "extraordinary" under New Mexico law. Examples of situations that *have* satisfied New Mexico's standard include, *inter alia*: (1) "caus[ing] the plaintiff to refrain from filing an action during the applicable period" by denying access to a prison's law library, *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007) (applying New Mexico law); (2) causing a plaintiff to rely upon "offers or promises of settlement, in connection with other conduct of defendants," *Molinar v. City of Carlsbad*, 735 P.2d 1134, 1137 (N.M. 1987); and (3) falsely assuring plaintiffs "that their invoice would be paid from . . . loan proceeds and the[y] had no reason to suspect otherwise," *Chase Manhattan Mortg. Corp. v. Caraway*, 62 P.3d 748, 752 (N.M. Ct. App. 2002). In contrast, prosaic circumstances such as confusion regarding the applicable filing deadlines do not meet New Mexico's equitable-tolling standard. *See Arasim v. Martinez*, No. 30,160, 2010 WL 4160977, at *1-2 (N.M. Ct. App. Apr. 23, 2010). These decisions lead us to adopt the view that equity does not require tolling in Ms. Sweesy's case.

Without intending to minimize either the grief that typically accompanies the loss of a parent or the allegedly burgeoning problem of elder abuse, we cannot say that the factual scenario detailed in Ms. Sweesy's amended complaint—as

29

relevant to the tolling question—is extraordinary. We discern no obstacles beyond Ms. Sweesy's control that can fairly be deemed "most unusual," "rarely equaled," "singular," or "phenomenal"—i.e., extraordinary. *See Extraordinary*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (2002) (capitalization altered). Thus, we uphold the district court's denial of the remedy of equitable tolling.

## IV

For the reasons detailed above, we hold that the district court correctly found that Ms. Sweesy's claims were time-barred under the applicable New Mexico statute and that the doctrine of equitable tolling cannot avail Ms. Sweesy. We therefore **AFFIRM** the district court's dismissal of Ms. Sweesy's action for failure to state a legally actionable claim.

ENTERED FOR THE COURT

Jerome A. Holmes
Circuit Judge

30